UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CHARLES McROBERTS, | ) |  |
|---|---|---|
|  | ) |  |
| Movant, | ) |  |
|  | ) |  |
| v. | ) | No.  4:13 CV 882 RWS |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

Petitioner Charles McRoberts has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  In his § 2255 petition McRoberts asserts that he received ineffective assistance of counsel.

For the reasons set forth below, I will deny McRoberts' motion.

**I.   Background**

The parties agreed to the following facts in the Plea Agreement (4:11-CR-00263-RWS Doc. #222):

> Beginning on an unknown date, but including September 2008, the defendant Charles McRoberts entered into an agreement with James Milliner, Dante Brandt, Michael Rogers, and others to distribute cocaine base (crack).  Between September 3, 2008 and September 28, 2008, investigators conducted in controlled buys of cocaine base (crack) from Michael Rogers.  Each of the transactions took place at 102 Highway J in Wright City, Missouri, 102 Highway J is owned by Charles McRoberts.  A surveillance camera that was placed in the area of 102 Highways J shows that there were numerous drug sales occurring on a daily basis from a pavilion that had been erected on the property.  Cooperators would testify that McRoberts would deliver the crack to Rogers in the morning, that he would re-supply Rogers as needed during the day, and that he would collect the proceeds and the remaining crack in the evening.
>
> On October 5, 2010, Michael Rogers was taken into custody and began serving a state court sentence.  Halesha Bradshaw began using the phone that Michael Rogers had been using to arrange for the sale of crack cocaine at 102 Highway J.  On October 6 and October 19, 2010, investigators conducted controlled buys of

crack cocaine from Halesha Bradshaw at 102 Highway J. Bradshaw was directed by McRoberts to conduct drug transactions. On November 11, 2010 Bradshaw stopped taking calls on the cellular telephone designated for the drug transactions.

Toll analysis for the phone showed incoming calls between November 11 and November 17, 2010 that went unanswered. On November 17, 2010, investigators again began to intercept calls over the telephone which was now being used by Porsheia Barnes. Porsheia Barnes spoke with Charles McRoberts on several occasions on November 17 and November 18. McRoberts directed Barnes to call all of the numbers in the telephone and give the individuals who answered a new telephone number. Investigators intercepted the calls during which Barnes told crack buyers to start calling the new number and that crack sales would resume at 5:00 p.m. on November 19. Barnes told McRoberts that she though he would have a "crowd" at the pavilion (102 Highway J).

Investigators sent a confidential source to buy crack on November 19, 2010. The confidential source later identified Christopher Adams as the individual who sold him crack. Subsequent calls to the new phone revealed that the phone was being used by Christopher Adams and McRoberts interchangeably.

After Bradshaw stopped selling crack, McRoberts appeared to take a more active role in the day-to-day drug sales. McRoberts was overheard on several telephone calls accepting orders from customers and directing them where to go. Investigators conducting surveillance observed McRoberts watching the drug sales from his black Escalade. Furthermore, investigators intercepted calls between Adams and McRoberts during which McRoberts gave Adams instructions. Investigators observed Adams conducting drug sales from 29520 Highway J, a trailer located adjacent to 102 Highways J, Wright City, Missouri.

Adams continued to sell crack cocaine for McRoberts until Adams was arrested on January 27, 2011. Shortly after Adams was arrested, McRoberts went to the Lincoln County Sheriff's Office to attempt to post bond for Adams. When Adams was unable to have a bond set, he requested that investigators give his cellular telephones to McRoberts.

After Adams' arrest, Antwaun Nunn began using the telephone to arrange for crack sales. Based upon surveillance, monitored telephone calls, and discussions with cooperators, investigators determined that Nunn conducted numbers sales of crack cocaine for McRoberts between January 28, 2010 and March 27, 2010. Conversations were intercepted during which McRoberts directed individuals to the Northridge Apartments for the purpose of purchasing crack from Nunn. Cooperators would testify that McRoberts supplied Nunn with the crack cocaine and that he would pick up the proceeds from the sales each day.

The amount of cocaine base (crack) for which the defendant Charles McRoberts is accountable, including relevant conduct, is difficult to calculate with precision.

Based upon the known evidence, however, the parties agree that the amount of cocaine base (crack) attributable to defendant Charles McRoberts is at least 280 grams of cocaine base.

McRoberts owned several businesses in the last ten years to include Mac's Quality Landscaping, Macsimum Entertainment, and Macsimum Transportation, however, McRoberts has not filed Form 1040 tax returns since 2006. Information submitted to the Internal Revenue Service indicated that in 2006 McRoberts sold real property for $57,500, paid mortgage interest in the amount of $6,568 and received income in the amount of $4,500. In 2006, US Bank and Community Bank filed multiple currency transaction reports showing that McRoberts deposited approximately $170,200 in cash and withdrew approximately $117,150 from his accounts. No sources of income for McRoberts were reported to the IRS for 2007, 2008, or 2009. Furthermore, there is no record of any entity McRoberts owned or operated filing tax returns.

McRoberts was involved in Macsimum Transport, LLC, a medical transportation service which was formed on June 25, 2010. McRoberts put the company in his sister's name, Taketha Brandt. McRoberts purchased six vehicles from Friendly Auto Source for the business. Three of the vehicles were purchased with $15,000 cash. McRoberts attempted to conceal his involvement in the company by putting the company in his sister's name.

Further investigation revealed that during 2009 and 2010, McRoberts used the music promotion business (Macsimum Entertainment) to launder the narcotics proceeds. Records indicate that the business was created and registered with the Missouri Secretary of State by Brad Gould and that both Gould and McRoberts have signatory authority on one business bank account in the name of Macsimum Entertainment. An additional bank account was located for which Gould had sole signatory authority. In spite of the fact that Gould was the 100% owner of Macsimum Entertainment, no business records for the company were found during a search of Gould's home on March 29, 2011.

On February 14, 2009, McRoberts and Gould opened an account in the name of Macsimum Entertainment with a financial institution involved in interstate commerce, namely, US Bank. The opening cash deposit of $7,000 was provided by McRoberts. From February 14, 2009 to October 2, 2009, a total of $88,000 in cash was deposited into the account.

Gould also introduced McRoberts to a hard money lender from whom he borrowed funds. McRoberts paid the loans back using some of the proceeds from his narcotics business. The lender offered McRoberts short-term loans ranging from sixty to ninety days. The lender took a profit of approximately 10% of the loan amount which ranged from $25,000 to $50,000. The loans were secured by Gould's residential property, and as a result, McRoberts paid Gould for the loans as well. Although the loans were made to McRoberts, they were in the name of

Brad Gould. The investigation revealed that some of the repayment of the loans was made with the proceeds of narcotics sales.

Bank records indicate that McRoberts repaid these loans to Gould in cash. Gould, in turn, deposited the funds into his personal or business bank account. Gould then wrote a check to the lender for repayment of the loans on McRoberts' behalf. Although McRoberts was operating a Macsimum Transportation at the time of some of the loans, the company had only one contract for services: Medical Transportation Management, Inc. which paid McRoberts by check, not cash. Because McRoberts did not have any other legitimate source of income, some of the loan repayments were the proceeds of the narcotics trafficking operation.

In addition to the loans, McRoberts purchased a 2007 Cadillac Escalade in a nominee name from an automobile dealer involved in interstate commerce. The automobile was purchased with the proceeds from narcotics sales. The vehicle was subsequently titled in Leonard Brandt's name, but the vehicle was always in the complete custody and control of McRoberts. McRoberts made cash monthly payments totaling $9,349.88.

McRoberts was charged in a two count superseding indictment with one count of conspiracy to distribute 280 grams or more of cocaine base (crack), in violation Title 21 U.S.C §§ 841(a)(1), 846, and 841(b)(1)(A)(iii), and one count of conspiracy to commit money laundering, in violation of Title 18 U.S.C. § 1956(a)(1)(B)(i). 4:11-CR-00263 Doc. # 1. McRoberts appeared before a United States magistrate judge for his initial appearance on July 28, 2011. Id. at Doc. # 20. McRoberts filed a waiver of filing pretrial motions on October 27, 2011. On November 29, 2011, McRoberts appeared before the United States magistrate judge and waived his right to file pretrial motions and to a hearing on any such motions. Id. at Doc. #s 182, 193, 574.

On January 17, 2012, McRoberts pleaded guilty to each of the counts in the indictment, and the Assistant United States Attorney agreed not to seek any further federal prosecution against him arising out of his distribution of cocaine base (crack) and money laundering from September of 2008 through the date of the indictment. Id. at Doc. # 222 at p. 1. The parties

agreed that either party could request a sentence above or below the U.S. Sentencing Guidelines range ultimately determined by the Court. Id. at Doc. # 222 at p. 1-2. McRoberts also agreed to forfeit to the United States certain property, including 29520 Highway J, Wright City, Missouri 62290, and 102 Highway J., Wright City, Missouri 63390. Id. at Doc. # 222 at p. 2.

At his plea hearing, McRoberts told me, under oath, that he was satisfied with his counsel's representation. (Plea Hr'g Tr. at 5). McRoberts told me there was nothing that he thought his attorney should have done that his attorney had not done in representing him. Id. at 6. McRoberts told me he had gone over his plea agreement with counsel and that counsel answered all of his questions. Id. at 8. McRoberts stated that no one had made any other promise or assurance to him in order to induce him to plead guilty. Id. at 14. McRoberts stated that he understood that he had the opportunity to plead not guilty and have a trial by jury, and that he knew that there would be no trial if he entered a guilty plea. Id. at 7.

McRoberts now claims that he received ineffective assistance of counsel.

## II. Grounds for Relief

In his 28 U.S.C. § 2255 motion, McRoberts alleges the following grounds for relief:

**a.** He was denied effective assistance of counsel in violation of the Sixth Amendment when his counsel:
  a) advised him that he could receive a sentence of 380 months after trial therefore it was in his best interests to plead guilty and receive 121 months;
  b) failed to discuss other possible defenses with him;
  c) failed to challenge the enhancement for a leadership role in the offense;
  d) advised him that if he filed motions, he would not be entitled to a full three point reduction in his guideline range for acceptance of responsibility, and
  e) led him to believe that he would receive a sentence of 121 months.

## III. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose

5

such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post-conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A motion pursuant to § 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis v. United States, 417 U.S. 333, 343 (1974).

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). One exception arises when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence, and the Supreme Court has not extended the exception to situations beyond involving a petitioner's actual innocence." Id. (citations omitted). "[T]he Court has emphasized the narrowness of the exception and has expressed its desire that it remain rare and available only in the extraordinary case." Id. (citations omitted). Section 2255 ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S.614, 622 (1998) (citations omitted).

## IV. ANALYSIS

### A. McRoberts Received Effective Assistance Of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. A claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To prevail on a claim alleging ineffective assistance of counsel, the defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). "First, the defendant must first show that the counsel's performance was deficient." Id. at 687. This requires the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. A defendant can demonstrate that counsel's performance was deficient where "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. If the defendant fails to show that his counsel was deficient, the court need not address the second prong of the Strickland test. See Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

To meet the second prong of Strickland, the defendant must demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "The defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the Strickland test as follows: the questions a court must ask are "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000). When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Considered objectively, counsel's performance is gauged by "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" Fields, 201 F.3d at 1027 (quoting Strickland, 466 U.S. at 688). "[W]e avoid making judgments based on hindsight." Id. A reviewing court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively. See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002).

### a. Counsel Was Not Ineffective In Allegedly Advising McRoberts That He Would Have Received A Sentence Of 380 Months Had He Gone To Trial And That He Would Receive 121 Months If He Pleaded Guilty

McRoberts asserts that his attorney was ineffective for advising him that "if he were to go to trial and lost he would receive 380 months by doing so [sic] defendant was advised to enter a

guilty plea by his counsel in order to receive 121 months the low end of his guideline." 4:13-CV-00882 Doc. # 1 at p. 4.

First, McRoberts' claim contradicts his statements to me at the plea hearing. At the plea hearing, McRoberts denied that any promises were made to him that were not put into writing. (Plea Hr'g Tr. at 14). McRoberts also denied that anyone had offered or given him anything to get him to plead guilty. (Id. at 15-16). After, the Assistant U.S. Attorney recited the facts that it believes it would have been able to prove beyond a reasonable doubt had there been a trial, McRoberts agreed that the facts were true. (Id. at 16, 22). Additionally, I conducted the following plea colloquy in advance of accepting McRoberts' guilty plea:

| | |
|---|---|
| Court: | You understand that the term of imprisonment for the charge to which you're pleading guilty under Count 1 is a term of not more than the rest of your life? |
| McRoberts: | Yes, Your Honor. |
| Court: | As to Count 2, it's a term of not more than 20 years? |
| McRoberts: | Yes, Your Honor. (Plea Hr'g Tr. at 22). |
| Court: | There is a maximum fine under Count 1 of $4 million. Do you understand that? |
| McRoberts: | Yes, sir. |
| Court: | A maximum fine under Count 2 of $1 million? Do you understand that? |
| McRoberts: | Yes, sir. |
| Court: | That you could be sentenced to the maximum term of imprisonment, each one added together, or the maximum fine on each count added together or all of them. Do you understand that? |
| McRoberts: | Yes, Your Honor. (Id. at 23). |
| Court: | Do you understand that by pleading guilty you are subjecting yourself to the maximum penalties we just discussed? |

9

| | | |
|---|---|---|
| McRoberts: | Yes, Your Honor. | |
| Court: | Now, at the time of sentencing your attorney and the United States Attorney may make recommendations to me about what your sentence should be, but you understand I'm not required to follow their recommendation? | |
| McRoberts: | Yes, Your Honor. | |
| Court: | If the sentence is more severe than the lawyers recommend or more severe than you had expected, that's not a reason to seek to withdraw your guilty plea. Do you understand that? | |
| McRoberts: | Yes, Your Honor.  (Id. at 24). | |

Here, McRoberts' claim that his attorney promised him that he would receive 121 months if he entered in to the plea agreement contradicts his statements to me, under oath, that no one had made him any promises outside the plea agreement and that he understood he was subjecting himself to maximum penalties.  Furthermore, McRoberts' indicated that he understood that his range of punishment for Count 1 of the indictment was up to life imprisonment and for Count 2 was up to twenty years.  McRoberts acknowledged that upon a guilty plea or after a trial, he was subject to a range of punishment between ten years and life and that he was subjecting himself to the maximum penalties by entering a guilty plea.

Moreover, McRoberts claims that his counsel advised him to accept the plea agreement does not demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The decision to accept the plea agreement was a strategic one, and counsels' "strategic choices made after a thorough investigation of law and facts…are virtually unchallengable." Id. at 690. "We presume attorneys provide effective assistance, and will not second-guess strategic decisions or exploit the benefits of hindsight." Payne v. United States, 78 F.3d 343, 345 (8th Cir.

1996). As a result, McRoberts' claim that he received ineffective assistance of counsel due to erroneous advice is meritless.

      **b.    Counsel Was Not Ineffective In Allegedly Failing To Discuss Other Possible Defenses**

McRoberts claimed that, "There was also no separate discussion of any other possible defences [sic]." 4:13-CV-00882 Doc. # 1 at p. 4. However, here, McRoberts indicated that he was satisfied with counsel's representation in the case and affirmed that he did not think there was anything that counsel should have done, but failed to do. (Plea Hr'g Tr. at 6). Furthermore, in his § 2255 petition McRoberts does not identify any possible defenses that he thought counsel should have discussed with him. As a result, McRoberts' claim is meritless.

      **c.    Counsel Was Not Ineffective In Failing To Challenge The Enhancement For A Leadership Role In The Offense**

McRoberts alleges that he has "no criminal history with drugs so there is no prior drug offences or prior convictions. Counsel still did not challenge the defendents' enhancement of leadership role. Counsel was not affective in protecting or putting the defendents' constitutional rights in his best interest [sic]." 4:13-CV-00882 Doc. # 1 at p. 4. McRoberts asserts that because he did not have prior drug offenses or convictions, counsel should have objected to the three level enhancement applied to the guidelines because McRoberts was a leader in the conspiracy.

At the plea hearing, I specifically asked McRoberts about the enhancement during the following plea colloquy:

    Court:          It is recommended that under Count 1 that three levels be added because you were a manager or supervisor of the conspiracy to distribute cocaine base and the conspiracy involved five or more people. Do you understand that?

    McRoberts:    Yes, sir.

11

| | |
|---|---|
| Court: | And two levels are to be added because you were convicted under Title 18, United States Code, 1956. Do you understand that? |
| McRoberts: | Yes, sir. |
| Court: | Up to three levels will be subtracted for your acceptance of responsibility in a timely fashion. Do you understand that sir? |
| McRoberts: | Yes, Your Honor. |
| Court: | As a result, it is recommended that the total offense level as to both counts will be a 32. Do you understand that? |
| McRoberts: | Yes, sir. |
| Court: | There is no agreement as to what your criminal history is or how it's to be treated by the guidelines. Do you understand that, sir? |
| McRoberts: | Yes, sir. (Plea Hr'g Tr. at 12). |

As a result, McRoberts orally confirmed to me that understood the plea agreement and that he was agreeing as to the three level enhancement due to his leadership role in the conspiracy. If counsel had objected to the three level enhancement, counsel would have been objecting to an agreed upon term of the plea agreement. Such an objection would have been inconsistent with the acceptance of responsibility and may have jeopardized the three level reduction McRoberts received. As a result, counsel, in not objecting to the enhancement, was abiding by the terms of the plea agreement. The decision not to object was a strategic one, and counsels' strategic choices made after a thorough investigation of law and facts…are virtually unchallengeable." Strickland, 466 U.S. at 690. "We presume attorneys provide effective assistance, and will not second-guess strategic decisions or exploit the benefits of hindsight." Payne, 78 F.3d at 345. As a result, McRoberts' claim is meritless.

### d. Counsel Was Not Ineffective For Allegedly Advising McRoberts That If He Filed Motions He Would Not Be Entitled To A Full Three Point Reduction In His Guideline Range For Acceptance Of Responsibility

McRoberts claims, "Counsel made it aware to the defendant that if any motions were filed the defendant would not be demonstrating his acceptance of responsibility early enough in his case to get [sic] three point deduction. At that time there would be no opportunity to enter a guilty plea agreement trial would be the defendents' only option. The transcripts show that Mr. Juengel never filed any motions on his clients' behalf. Ultimately giving Mr. McRoberts a non-voluntary plea [sic]." 4:13-CV-00882 Doc. # 1 at p. 4.

Section 3E1.1(b) of the Sentencing Guidelines provides that "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently," that a third point should be deducted for acceptance of responsibility. Counsel's alleged advice that McRoberts should accept the plea agreement without filing pretrial motions comported with achieving the three point reduction. To act otherwise may have put this reduction in jeopardy. The decision not to file pretrial motions was a strategic one, made by both McRoberts and counsel. Counsels' strategic choices made after a thorough investigation of law and facts…are virtually unchallengeable." Strickland, 466 U.S. at 690. "We presume attorneys provide effective assistance, and will not second-guess strategic decisions or exploit the benefits of hindsight." Payne, 78 F.3d at 345. Moreover, counsel's advice is legally and factually accurate and does not indicate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The Assistant United States Attorney confirmed that the reduction of a third point would not be requested if McRoberts filed any motions. 4:13-CV-

00882 Doc. #11 at p. 11. Even if it did indicate that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment, McRoberts does not indicate what prejudice he suffered as a result of counsel's advice. As a result, McRoberts' claim that his counsel was constitutionally ineffective for advising him not to file pretrial motions is without merit.

    e.    **Counsel Was Not Ineffective For Allegedly Advising McRoberts That He Would Receive A Sentence Of 121 Months**

McRoberts claims that "The defendant agreed to enter a guilty plea in belief he would receive the low end of the sentencing guideline if he did not give his testimony for James Milliner who was taking his case to trial. This was a verbal agreement among counsel Daniel Juengel Defendant Charles McRoberts and Assistant DA Jeanette Graviss. At sentencing the Assistant DA requested 151 months imprisonment. McRoberts was sentence to 136 months incarceration. Counsel currently still agrees that 136 months was unjust and not what was agreed upon. Daniel Juengel statement to this day still states that the sentencing the defendant received falls directly in the middle and though it was not agreed upon it could have been worse [sic]." 4:13-CV-00882 Doc. #1 at p. 5

Here, McRoberts' claim that he believed he would receive the low end of the sentencing guideline due to a verbal agreement with counsel and the Assistant United States Attorney directly contradicts his statements to me, under oath, at the plea hearing. At the plea hearing, he confirmed to me, under oath, that the government had not made any promises to him that were not put in writing and stated that he understood he was subject to the maximum penalties. (Plea Hr'g Tr. at 14, 22, 24). In fact, I specifically addressed any expectation that McRoberts might have that was not written down in the plea agreement:

    Court:    I'm asking that to protect you because if you're expecting certain things to happen and they're not written down, I need to know about it. You understand that.

McRoberts: Yes, sir. (Id. at 14-15).

The only discussion was regarding the Assistant United States Attorney's agreement not to object to McRoberts remaining on bond until the time of sentencing and the understanding that the United States Attorney would not pursue any tax violations as a result of the charges McRoberts was pleading guilty to. (Id.) Moreover, McRoberts acknowledged that no promises had been made to him outside the plea agreement with regard to the sentence he would receive, and I made it clear that he was still subject to the maximum penalties. As a result, McRoberts' claim is without merit.

### B. An Evidentiary Hearing Is Not Warranted

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo–Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). An evidentiary hearing need not be held if McRoberts' "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). Because the record conclusively shows that McRoberts is not entitled to relief as a matter of law, I need not hold a hearing.

### C. Certificate of Appealability

For this Court to grant a certificate of appealability, McRoberts must make a substantial showing that his constitutional right was denied. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id. For the

reasons set forth above, I find McRoberts has not made such a showing. As such, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Charles E. McRoberts to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for an evidentiary hearing is **DENIED.**

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as McRoberts has not made a substantial showing of the denial of a federal constitutional right.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of May, 2014.